**BRAZILIAN INVESTMENT ADVISORY SERVICES, LTDA., Plaintiff,**

v.

**UNITED MERCHANTS & MFG., INC., Defendant.**

No. 87 Civ. 1040 (LFM).

United States District Court, S.D. New York.

Aug. 27, 1987.

Willkie Farr & Gallagher by Richard L. Klein, New York City, for defendant.

Stanley S. Getzoff, New York City, for plaintiff.

## OPINION

MacMAHON, District Judge.

Defendant United Merchants & Mfg., Inc. ("United") moves for dismissal of this action pursuant to the doctrine of forum non conveniens and Rules 9(b) and 12(b)(6), Fed.R.Civ.P., or, in the alternative, for entry of summary judgment in its favor pursuant to Rule 56(c), Fed.R.Civ.P.

Although plaintiff, Brazilian Investment Advisory Services, Ltda. ("BIAS"), invokes the jurisdiction of this court, pursuant to 28 U.S.C. § 1332(a)(2),[1] "[t]he doctrine of forum non conveniens allows a court to decline jurisdiction even when jurisdiction is authorized by a general venue statute."[2] Also, from the presumption "that a plaintiff's choice of forum [is] entitled to great deference when the forum chosen [is] the home of the plaintiff,"[3] it follows that a foreign plaintiff's choice of a United States forum " 'deserves less deference' than would be accorded a United States citizen's choice."[4] Because BIAS is a foreign corporation organized under the laws of the Republic of Brazil[5] (and does not contend that it is barred from pursuing this action in the Brazilian courts), we will apply the presumption favoring plaintiff's choice of forum with less than maximum force.[6]

---

1. *See* Complaint ¶ 1.

2. *In re Union Carbide Corp. Gas Plant Disaster,* 634 F.Supp. 842, 845 (S.D.N.Y.1986).

3. *Id.,* 634 F.Supp. at 845. *See also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

4. *In re Union Carbide Corp., supra,* 634 F.Supp. at 845. *See also Piper Aircraft Co. v. Reyno, supra,* 454 U.S. at 261, 102 S.Ct. at 268, 70 L.Ed.2d at 439.

5. *See* Complaint ¶ 1; *see also* O'Connor Affidavit, sworn to June 1, 1987, at ¶ 3.

6. *See Piper Aircraft Co. v. Reyno, supra,* 454 U.S. at 261, 102 S.Ct. at 268, 70 L.Ed.2d at 439.

The factors to be considered by a court in deciding whether or not to dismiss a complaint on the ground of forum non conveniens were discussed by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and, more recently, in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct.. 252, 70 L.Ed.2d 419 (1981).

In *Piper, supra,* the Court held that "[t]he forum non conveniens determination is committed to the sound discretion of the trial court," which is required to consider all relevant private and public interest factors and undertake a reasonable balancing of these factors.[7]

In *Gulf Oil, supra,* the Supreme Court listed the following private interest factors:

Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of ... witnesses ... and all other practical problems that would make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.[8]

In listing the public interest factors which this court should consider in deciding whether or not to apply the doctrine, the Supreme Court, in *Gulf Oil, supra,* further stated:

Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin.... There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.[9]

However, "[t]he so-called private interest factors, along with public interest factors ..., were not intended to be rigidly applied."[10] As the Supreme Court stated in *Piper, supra,* " '[e]ach case turns on its facts.' If central emphasis were placed on any one factor, the forum non conveniens doctrine would lose much of the very flexibility that makes it so valuable."[11]

*Private Interest Factors*

Plaintiff, a Brazilian corporation, seeks to recover a commission for services allegedly performed in introducing the Bank of Scotland as a potential purchaser of, or investor in, Sudamtex, a Brazilian corporation and wholly-owned subsidiary of United.[12]

The only connections this action has with New York which are of any significance are:

(1) United is a "corporation existing under and by virtue of the laws of the State of Delaware with its principal offices in the State and County of New York."[13]

(2) An unsolicited telex, dated September 10, 1985,[14] from Mr. O'Connor, BIAS's president in Brazil,[15] to Mr. Ruskin, whom BIAS understood to be United's chairman of the board[16] in New York, which stated, in part, that:

One of our clients (an European Bank) is interested in converting part of its loan portfolio in Brasil to equity. We have mentioned Sudamtex to them and they

---

7. *Id.,* 454 U.S. at 257, 102 S.Ct. at 264, 70 L.Ed.2d at 436.

8. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947).

9. *Id.,* 330 U.S. at 508–09, 67 S.Ct. at 843, 91 L.Ed. at 1062–63.

10. *In re Union Carbide Corp., supra,* 634 F.Supp. at 852.

11. *Piper Aircraft Co. v. Reyno, supra,* 454 U.S. at 249–50, 102 S.Ct. at 263, 70 L.Ed.2d at 432.

12. *See* Furth Affidavit, sworn to April 23, 1987, at ¶ 2.

13. Complaint ¶ 1.

14. *See* Exhibit A to O'Connor Affidavit, *supra.*

15. *See* O'Connor Affidavit, *supra,* at opening statement.

16. *Id.,* at ¶ 3.

have asked us to enquire whether it might be for sale.[17]

(3) A telephone call Mr. O'Connor claims to have made on December 4, 1985 to Mr. Furth, a member of United's board of directors and its executive vice-president in charge of United's South American operations,[18] and "a long conversation [had] with him in New York concerning our Brokerage arrangements."[19] Although Mr. Furth does not deny the existence or contents of this conversation, he avers that he was telephoned "at my office in Caracas, Venezuela."[20]

Apart from the two electronically-assisted communications, both of which were initiated by BIAS, "all of the negotiations relating to the purported agreement upon which [BIAS] bases its claim were conducted by representatives of the parties located in, and by telephone and telex between, Rio de Janeiro, Brazil and Caracas, Venezuela. Accordingly, all of the evidence, including both witnesses and documents, that bear upon plaintiff's claims is located in South America."[21] In short, we find that the private interests of the parties—plaintiff and defendant alike—compel dismissal of this action.

*Public Interest Factors*

As previously noted, both BIAS and Sudamtex are Brazilian corporations.[22] Most, if not all, of the relevant evidence relating to the purported agreement, its terms, conditions and liability thereunder, will come from witnesses and documents located in Brazil. Also, any damages suffered by BIAS are likely to have been incurred in Brazil. Thus, Brazil would appear to have the most significant contacts with and the greatest interest in the transaction. Moreover, the likelihood of the need to apply Brazilian law with respect to the substantive issues raised by BIAS weighs in favor of dismissal.

If this action is dismissed and all claims are litigated in Brazil, BIAS can enforce a judgment in Brazil, or, if United's assets in Brazil are inadequate, BIAS can enforce the judgment in the United States.[23]

We must also consider the fact that both parties have retained local counsel—Mr. Domingos Fleury Da Rocha representing BIAS and Mr. Thomas Benes Felsberg representing United. One area of disagreement between the two attorneys focuses upon their assessments of the Brazilian court system and the time it would take to litigate this action to final judgment in Brazil. While BIAS's counsel contends that it "would probably take between five and eight years to reach final judgment,"[24] United's counsel "believe[s] that prosecution of this action to judgment in Brazil would require approximately one and one half to two and one-half years."[25] We acknowledge that delays and backlog may exist in Brazilian courts, but United States courts are also subject to delays and backlog.[26]

There appears to be no question that Brazil, one of the many countries in the world whose legal system is structured by

17. *See* Exhibit A to O'Connor Affidavit, *supra.*

18. *See* Furth Affidavit, *supra,* at ¶ 1.

19. O'Connor Affidavit, *supra,* at ¶ 5.

20. Furth Affidavit, *supra,* at ¶ 5.

21. Furth Affidavit, *supra,* at ¶ 2. *See also* Furth Affidavit, *supra,* at ¶¶ 5, 6, 7, 9 and 12, and Exhibits A, B and C attached thereto; Defendant's Memorandum of Law at 6 and 11.

22. Furth Affidavit, *supra,* at ¶ 2.

23. *See Transunion Corp. v. Pepsico, Inc.,* 640 F.Supp. 1211, 1219 (S.D.N.Y.1986), *aff'd,* 811 F.2d 127 (2d Cir.1987); *Ackerman v. Ackerman,* 517 F.Supp. 614, 624 (S.D.N.Y.1981), *aff'd,* 676 F.2d 898 (2d Cir.1982) ("Under New York case law, a foreign judgment will generally be granted the same credit as one rendered by a sister state."); *Fairchild, Arabatzis & Smith v. Prometco (Produce & Metals) Co.,* 470 F.Supp. 610, 615 (S.D.N.Y.1979) ("[A] foreign judgment when sued upon in New York normally precludes a retrial upon the merits"). *Cf.* N.Y. CPLR §§ 5301–5309, Uniform Foreign Country Money Judgments Recognition Act (McKinney 1978 & 1987 P.P.).

24. *See* Exhibit C to O'Connor Affidavit, *supra.*

25. Reply Affidavit of Thomas Benes Felsberg, sworn to July 7, 1987, at ¶ 4.

26. *See* Remarks of Hon. Warren E. Burger, Chief Justice, Supreme Court of the United States, 100 F.R.D. 499, 534 (1983).

a civil code, would resolve this dispute by means of different procedures. "A Brazilian civil trial is 'inquisitorial' rather than 'adversarial,' with the judge acting as factfinder, and the presentation of proof relying heavily upon documents, although witnesses appear in court for examination by the judge. It also appears that pre-trial discovery of an opponent's documents or employees, or of third-party witnesses, is not provided for by the Brazilian Procedural Civil Code." [27] Although these procedural infirmities seem to favor plaintiff's choice of forum, "the Second Circuit, in the forum non conveniens context, is apparently prepared to accept procedural differences in the law of the proposed transferee forum, so long as those differences do not rise to the level of a complete denial of due process." [28]

In the instant case, we are not persuaded that the Brazilian civil code procedures are entirely unable to deal with the issues involved. In short, we see no reason why the basis for BIAS's claims cannot be presented to a Brazilian court.

Having considered the facts of this case in the light of both private and public interest factors, we conclude that this action should be dismissed on the ground of forum non conveniens. Plaintiff has not offered a single compelling reason with respect to its own convenience to support its choice of this forum. Indeed, plaintiff appears to be very anxious to travel thousands of miles and to transport witnesses and documents to a distant forum, New York, despite the opportunity for adjudication in Brazil, its home forum and place of incorporation. Put succinctly, both the parties and the cause of action have substantial connections with Brazil.

Accordingly, defendant's motion to dismiss the complaint on the ground of forum non conveniens is granted subject to the following conditions:

(1) Should the Brazilian court refuse to exercise jurisdiction, or the defendant refuse to submit to jurisdiction, plaintiff may move in this court to restore this action; and

(2) Defendant waives any statute of limitations defense that has arisen since the commencement of this action in the Southern District of New York.

In light of our disposition, we need not address defendant's motion to dismiss, pursuant to Rules 9(b) and 12(b)(6), Fed.R. Civ.P., and for summary judgment in its favor, pursuant to Rule 56(c), Fed.R.Civ.P.

So ordered.

---

**27.** *Panama Processes, S.A. v. Cities Service Co.,* 500 F.Supp. 787, 800 (S.D.N.Y.1980), *aff'd,* 650 F.2d 408 (2d Cir.1981).

**28.** *Id.,* 500 F.Supp. at 800.