OPINION OF THE COURT
Sylvia G. Ash, J.
*805 This is an action for breach of contract. The plaintiff, United Real Estate & Property Management, Inc. (United), moves for summary judgment, claiming that there is no issue of fact that it was the procuring cause of the sale of the defendants’ property, and is thus entitled to receive a broker’s commission in the sum of $9,800. The defendants cross-move for summary judgment claiming that the lawsuit was initiated in bad faith and was frivolous, and therefore plaintiffs claim should be dismissed.
On April 1, 2006, the plaintiff entered into a listing agreement with the defendants, which gave it an exclusive right to sell defendants’ apartment throughout the duration of the contract, which expired on July 1, 2006. Before the agreement terminated, the plaintiff, through its agent, Olga Natsentova, procured a buyer who was willing and able to purchase the apartment. However, the buyer did not sign a contract of sale for the purchase of the apartment before the expiration of the listing agreement between the plaintiff and the defendants. On July 2, 2006, the defendants entered into a new listing agreement with Maximillion Realty (Maximillion). On July 4, 2006, Ms. Natsentova left the employ of the plaintiff and became affiliated with Maximillion. Upon Maximillion’s advisement, the defendants lowered the listing price of the subject property, and consequently signed a contract of sale on July 5, 2006 with the buyer that was procured by the plaintiff. The sale closed and the transfer of the property took place on October 6, 2006. As a result of the sale, Maximillion received a broker’s commission in the amount of $9,800. The plaintiff contends that it should have received the broker’s commission because it was the procuring cause of the sale, having initially introduced the buyer to the seller and having commenced the negotiations that ultimately led to the sale. The plaintiff further contends that Ms. Natsentova directed the defendants and the buyer to Maxi-million so that she could enrich herself and her new employer at the plaintiffs expense.
The function of the court on a motion for summary judgment is not to resolve issues of fact or determine matters of credibility, but merely to determine whether such issues exist (see Kolivas v Kirchoff, 14 AD3d 493 [2d Dept 2005]; Zuckerman v City of New York, 49 NY2d 557 [1980]). The moving party carries the initial burden of tendering sufficient evidentiary proof, in admissible form, to demonstrate the absence of any material issues of fact as a matter of law (see Alvarez v Prospect Hosp., *806 68 NY2d 320 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]; Coleman v Maclas, 25 Misc 3d 1229[A], 2008 NY Slip Op 52700[U] [Sup Ct, Bronx County 2008]).
In order to state a direct claim for a real estate broker’s commission, a broker must show: (a) that he or she is duly licensed; (b) that he or she had a contract, express or implied, with the party to be charged with paying the commission; and (c) that he or she was the “procuring cause” of the sale (see Marciano v Ran Oil Co. E., LLC, 63 AD3d 1118, 1119 [2d Dept 2009]; Buck v Cimino, 243 AD2d 681, 684 [2d Dept 1997]). In Buck (supra), the court ruled that introduction of the buyer and the seller by the broker alone is sufficient to set in motion the chain of circumstances that led to the sale. To entitle a broker to compensation it is sufficient that a sale be effected through his agency as its procuring cause; and if his communications with the purchaser are the means of bringing him and the owner together, and the sale results in consequence, the compensation is earned (see Zuckerman v Martin, 29 Misc 2d 634, 640 [Mun Ct, Bronx County I960]). If the broker procures a buyer ready, willing, and able to carry out the terms of the sale, and the sale is actually entered into between the seller and the buyer produced by the efforts of the broker, the broker earns his commission even though the seller ultimately negotiates with the buyer produced by the broker and accepts a lower price than originally asked by the seller (see Zuckerman v Martin, 29 Misc 2d at 638-639).
Here, the plaintiff, through its then agent, Olga Natsentova, secured the buyer who was ready, willing, and able to purchase the apartment. Even though plaintiff did not have a listing agreement with the defendants at the time the contract of sale was signed, it is arguable that the sale would not have occurred had it not been for the agent’s efforts in bringing the purchaser and the sellers together while she was still in the plaintiff’s employ. When determining the right to a broker’s commission after the expiration of a listing agreement, the courts look to the actual contractual agreement to see if there is an extension clause (see Sunset 3 Realty, Inc. v Russo, 7 Misc 3d 1015[A], 2005 NY Slip Op 50600[U] [Sup Ct, Suffolk County 2005]). An extension clause is commonly included in a real estate listing contract to protect a broker from loss of compensation when a property is sold by the owner after the termination of the listing contract to a person who was introduced to the property by the broker (see Picotte Real Estate v Gaughan, 107 AD2d 996, 997 [3d Dept 1985]).
*807 A typical extension clause in a listing agreement states that the seller is obligated to pay a commission if the listing agreement expires and he sells the property to someone to whom the broker had shown the house within six months immediately following the expiration of the agreement (see Sunset 3 Realty, Inc., supra). In the case at bar, it is undisputed that the sellers and buyer were introduced to each other by Ms. Natsentova while she was still in plaintiffs employ, that the listing agreement between the plaintiff and defendants expired before the buyer entered into a contract of sale with the sellers, and lastly, that there was no extension clause in the listing agreement between the plaintiff and the defendants. Had there been an extension clause in the listing agreement, case law dictates that plaintiff would have prevailed against the defendants and would have been entitled to receive the broker’s commission. However, case law also dictates that the fundamental precept of contract interpretation is that written agreements are construed in accordance with the parties’ intent (see Norma Reynolds Realty, Inc. v Edelman, 29 AD3d 969 [2d Dept 2006]). A written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms. (Id.) Since the courts look to the agreement to determine the parties’ intent, in the case at bar, the fact that an extension clause was not included in the listing agreement shows that the parties did not intend for the plaintiff to receive a commission were the property to be sold after the expiration of the listing agreement.
While the plaintiff contends, and the court agrees, that its former agent, Olga Natsentova, acted in bad faith in retaining the full broker’s commission for herself, the court notes that Ms. Natsentova is not a party in this action. The plaintiff has no recourse against such behavior because it did not protect itself by including an extension clause in the listing agreement. Since the agreement was final and complete, case law dictates that it must be enforced according to the plain meaning of its terms, which do not provide for the receipt of a commission after the expiration of the listing agreement.
Therefore, the plaintiff’s motion for summary judgment is hereby denied, and the defendants’ motion for summary judgment is granted.